JOSEPHINE NOLAN, ADMINISTRATRIX (ESTATE OF JAMES NOLAN) *v.* DOLINDO MORELLI ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued December 9, 1966—decided January 17, 1967

*William F. Mangan, Jr.,* and *Alan A. Green,* with whom was *Thomas C. Marshall,* for the appellant (plaintiff).

*Bertrand Quinto,* with whom, on the brief, was *Jeffrey M. Mines,* for the appellee (defendant Morrocco).

*Frank DeNezzo,* with whom, on the brief, was *Gerald R. Swirsky,* for the appellees (defendants Morelli et al.).

KING, C. J. The plaintiff, as administratrix of the estate of her deceased husband, James Nolan, instituted this action, in six counts, under our wrongful death statute (General Statutes § 52-555) for the recovery of damages for his death. The basic claim is that the death was caused by the decedent's intoxication, which in turn was caused by the defendants' sales to him of intoxicating liquor, and that this intoxication caused him so to operate his motor car as to collide with a tree, as a result of which he sustained the injuries from which he died the same day.

The first three counts of the complaint are directed against the defendants Dolindo Morelli and Palade Morelli, as the proprietors and operators of the Meadowland Restaurant, in New Britain. Counts four, five and six of the complaint are directed against the defendant Carmen Morrocco, as the proprietor and operator of the Cameo Restaurant, in Bristol.

Since the first, second and third counts against the Morellis are, for the purposes of this appeal, respectively identical with the fourth, fifth and sixth

counts against Morrocco, only counts one, two and three of the complaint need be discussed.

The plaintiff, in this suit under our wrongful death statute, stands in the shoes of the decedent and can recover only if the decedent, had his injuries not proven fatal, could himself have recovered. *Foran* v. *Carangelo,* 153 Conn. 356, 360, 216 A.2d 638; *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 668, 136 A.2d 918. Thus, the question to be determined is whether, in any one of the three counts of the complaint, a cause of action is stated which the decedent himself, had he lived, could have maintained.

## I

The first count of the complaint purports to state a cause of action under General Statutes (Rev. to 1962) § 30-102, our civil damage or dram shop act, hereinafter referred to as the Act.[1]

By its express terms, the Act authorizes a recovery, where its conditions are fulfilled, by one injured

---

[1] "Sec. 30-102. LIQUOR SELLER LIABLE FOR DAMAGE BY INTOXICATED PERSON. If any person, by himself or his agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, up to the amount of twenty thousand dollars, or to persons injured in consequence of such intoxication up to an aggregate amount of fifty thousand dollars, to be recovered in an action under this section, provided the aggrieved person or persons shall give written notice to such seller within sixty days of the occurrence of such injury to person or property of his or their intention to bring an action under this section. Such notice shall specify the time, the date and the person to whom such sale was made, the name and address of the person injured or whose property was damaged, and the time, date and place where the injury to person or property occurred. No action under the provisions of this section shall be brought but within one year from the date of the act or omission complained of."

in person or property as a consequence of the intoxication of another person to whom intoxicating liquor has been sold while he was intoxicated, but it clearly does not authorize recovery for injuries or property damage sustained by the intoxicated purchaser himself. *Lavieri* v. *Ulysses,* 149 Conn. 396, 400, 180 A.2d 632; *Pierce* v. *Albanese,* 144 Conn. 241, 250, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21.

Since the decedent was the intoxicated person in this case and he himself had no right of action under the Act, there was none which could survive to his administratrix. Consequently, the first count, based on the Act, states no valid cause of action in favor of this plaintiff, and the court was not in error in sustaining the defendants' demurrer to that count on the foregoing ground.

## II

The second count purports to state a common-law action in tort based on negligence and intentional wrong in selling intoxicating liquor to the decedent, and in encouraging him to purchase intoxicating liquor, while he was intoxicated or which caused him to become intoxicated. The plaintiff claims that if, as we have held, she has no right of action under the Act, she has or should have a right of action at common law.

At common law it was the general rule that no tort cause of action lay against one who furnished, whether by sale or gift, intoxicating liquor to a person who thereby voluntarily became intoxicated and in consequence of his intoxication injured the person or property either of himself or of another. The reason generally given for the rule was that the proximate cause of the intoxication was not the

furnishing of the liquor, but the consumption of it by the purchaser or donee. The rule was based on the obvious fact that one could not become intoxicated by reason of liquor furnished him if he did not drink it. 30 Am. Jur., Intoxicating Liquors, §§ 520, 521; 48 C.J.S. 716, Intoxicating Liquors, § 430; see note, 54 A.L.R.2d 1152. Although this court has not had occasion directly to approve the common-law rule, it has given strong intimation of a recognition of the rule in *Pierce* v. *Albanese,* supra, 249, and *London & Lancashire Indemnity Co.* v. *Duryea,* 143 Conn. 53, 59, 119 A.2d 325. And the Superior Court directly adopted the common-law rule in *Noonan* v. *Galick,* 19 Conn. Sup. 308, 310, 112 A.2d 892.

In Connecticut, as far back as 1872, it came to be felt that the foregoing common-law rule was to some extent overly harsh and should be modified by statute. Such statutes, which were enacted in numerous other states, came to be known as civil damage or dram shop acts. See *Staples* v. *Lucas,* 142 Conn. 452, 456, 115 A.2d 337. Connecticut's first such statute is found in § 8 of chapter 99 of the Public Acts of 1872, and its enactment indicated a knowledge, by the General Assembly, of the foregoing common-law rule. The 1872 act gave a cause of action against a seller who sold intoxicating liquor to a person who thereby became intoxicated for "any damage or injury to any other person, or to the property of another" done by the intoxicated person "in consequence" of his intoxication. Thus, this act, in situations where it was applicable, displaced the common-law rule that the proximate cause of intoxication was not the furnishing of the liquor but its consumption. The act was carried

into the Revision of 1875, page 269, as § 9 of part I of chapter XIV of title 16.

In 1882, the law relating to intoxicating liquor was extensively revised, and the civil damage statute became § 12 of part VI of chapter 107 of the Public Acts of 1882. The statutory liability of the seller was enlarged to include sales made by his agent but was restricted to sales of liquor "to be drunk on the premises". This statute was continued, without material change, as § 3101 of the Revision of 1888, § 2713 of the Revision of 1902, and § 2815 of the Revision of 1918.

After the prohibition era, the basic form of our present civil damage act was adopted and now appears as General Statutes (Rev. to 1962) § 30-102, as quoted in footnote 1. This Act differed from the earlier forms of the Act, and the effect of this difference was explained in *Pierce* v. *Albanese,* 144 Conn. 241, 246, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21. In that case, it was pointed out that the statute in its present form "imposes liability irrespective of any causal relation between the sale of the intoxicating liquor to an intoxicated person and the injury which follows as a result of the intoxication." Ibid. In this respect, as well as by eliminating the restriction to sellers of liquor "to be drunk on the premises", the General Assembly unmistakably manifested its intention to simplify, and in some respects to strengthen and enlarge, the statutory cause of action.

And yet in this long period of over ninety years, the General Assembly, despite these foregoing significant changes, has remained constant in limiting the statutory right of recovery to persons other than the intoxicated person himself. It would have

been an extremely simple matter for the General Assembly to have inserted in the present statute, for instance, after the words "the person or property of", the words "himself or", so that the Act would cover injuries to the person or property of the intoxicated person himself as well as to the person or property of another. Had something along this line been done, the statute would have been available to the intoxicated person himself. From this persistent exclusion, for nearly a century, of the intoxicated person himself from any right of recovery under the Act, it becomes clear that the statute, from as far back as 1872, at the least was intended to, and did, embrace the only modification of the common-law rule which the General Assembly has ever intended to make.[2] See 30 Am. Jur. 825, Intoxicating Liquors, § 325; note, 8 A.L.R.3d 1412, 1413 § 2.

---

[2] Since, as hereinafter pointed out, the plaintiff has alleged no facts which could support any common-law action, we have no occasion to decide, or even to consider, whether, as seems to be claimed by the defendants, the Act goes further and is an exclusive remedy in the sense that it abrogates any common-law remedy which, under any circumstances, could otherwise exist against a seller, as such, of intoxicating liquor for damages resulting to the person or property of third persons, or of the purchaser himself, caused by the purchaser's intoxication.

The Act is concerned only with the liability of a seller, as such, of intoxicating liquor. But if, under any circumstances, any alternative common-law right against a seller, as such, exists, it would, to the extent that it exists, necessarily permit the avoidance, through use of a common-law action, of the provision of the Act restricting the amount of damages recoverable, as well as of the provision making the giving of a written notice a condition precedent to a cause of action under the Act. The Act itself, however, contains no provision expressly making it an exclusive remedy against sellers, as such, of intoxicating liquor for damages to person or property caused by the intoxication of a purchaser, whether those damages are sustained by the purchaser himself or by innocent third parties.

While the policy considerations implicit in our dram shop act may be subject to differences of opinion, it certainly was not unreasonable for the General Assembly to believe that to accord a right of action against a furnisher of alcoholic liquor otherwise than by sale, such as a donor, would be neither fair nor desirable; but that to accord, under certain circumstances, a right of action against a seller of alcoholic liquor, limited to innocent third party victims of an intoxicated person's misconduct, if resulting from his intoxication, would be fair and desirable. See note, 8 A.L.R.3d 1412, 1413 § 2. It is also obvious that the General Assembly might properly consider that the evil of intoxication, and the manifold disastrous consequences flowing from it, would not be likely to be lessened by according against a seller of intoxicating liquor a cause of action in favor of an intoxicated customer for injury to himself or his property resulting from his own intoxication. To recompense in damages an injury to an intoxicated person or his property resulting from his own overindulgence in intoxicating liquor might, quite properly, be felt by the General Assembly to encourage, rather than to discourage, such overindulgence.

Of course if a cause of action is not predicated on the defendant's furnishing, whether by sale or gift, intoxicating liquor, it would not fall within the common-law rule that the consumption, rather than the furnishing, of intoxicating liquor is the proximate cause of intoxication and of any resulting damage to person or property.

Thus, a cause of action predicated on negligence in the failure of the proprietor of a restaurant, or his servants or agents, to exercise reasonable care in the supervision of the conduct of patrons or

other business visitors within his establishment would be unaffected by the common-law rule, whether they were or were not intoxicated and, if intoxicated, regardless of when, where, or how they became intoxicated.[3]  In such a situation, a patron or business visitor of the establishment who sustained an injury in person or property as a consequence of such negligence in supervision might have a common-law cause of action under the rule of cases such as *Lowthert* v. *Loyal Order of Moose of Stamford, Lodge 940, Inc.,* 147 Conn. 529, 533, 163 A.2d 106.  A collection of cases of this general type, involving injuries to third party patrons, may be found in an annotation in 70 A.L.R.2d 628, 645, subdivision III, especially §§ 17–21, pp. 655–669. Such cases, however, are of no benefit to this plaintiff since she stands in the shoes of the intoxicated purchaser himself.

It is unnecessary for the purposes of this case to determine whether particular factual situations could ever arise where common-law liability, whether under the duty stated in the *Lowthert* case or otherwise, might support a cause of action on behalf of a patron who was himself injured in person or property as a consequence of his being under the influence of intoxicating liquor.  See, for instance, *Galvin* v. *Jennings,* 289 F.2d 15, 17 (3d Cir.).  The plaintiff has alleged no such cause of action here, although two specifications of claimed common-law tort liability in the second count perhaps should be discussed in this connection.

---

[3] If a sale of intoxicating liquor was made to an intoxicated patron, a third party patron or business visitor in the establishment who was injured by the intoxicated purchaser might also have a statutory cause of action against the seller under our civil damage act.

One of these alleges that the defendants forced or induced the decedent to consume alcoholic beverages when they knew him to be intoxicated and "unable to resist their offerings and encouragements." Insofar as this inability to resist resulted from his voluntary intoxication, no common-law liability is alleged because, as far as appears, if the decedent was in such a state of intoxication, he would also have been unable safely to operate a motor car anyway, and it is not alleged, nor, without any express allegation, could it be reasonably inferred, that the further consumption of liquor, after he had reached such a state of voluntary intoxication as alleged, was a superseding cause of his inability safely to operate his car and of his claimed resulting death. See cases such as *Warner* v. *Liimatainen*, 153 Conn. 163, 167, 215 A.2d 406.

It is also clear, from the allegations of the specification as a whole, that the use of the word "forced" did not amount to an allegation that the defendants, by physical force, violence or intimidation, actually compelled the decedent to consume intoxicating liquor so as to make inapplicable the common-law rule that the voluntary consumption of intoxicating liquor is the proximate cause of the intoxication and of the injuries resulting therefrom. Insofar as it is alleged that he was "encouraged" or "induced" to consume alcoholic liquor, it was nonetheless a voluntary act on his part even though his prior intoxication, which is not alleged to have been involuntary in any sense, may have made him more susceptible to such encouragement or inducement.

The second specification predicates liability on the part of the defendants for allowing the decedent to leave the premises after they had served him with intoxicating liquors although they knew, or in the

exercise of reasonable care should have known, that he would be operating an automobile when he was in no condition physically or mentally so to do. If it is assumed, as is alleged in the complaint, that the operation of the car by the decedent while he was intoxicated was the immediate cause of his death, it is of course unfortunate, from the vantage point of hindsight, that the defendants did not contrive to dissuade or prevent him from operating his car. But the plaintiff has pointed to no common-law duty resting on these defendants, as sellers, proprietors or otherwise, to go to that extent, or otherwise to guard against injuries sustained at unknown distances from the defendants' premises and at places and under circumstances wholly outside the defendants' knowledge or control. It is hardly necessary to point out the difference between the present case and such cases as *Galvin* v. *Jennings,* 289 F.2d 15, 16 (3d Cir.), where it was alleged that the defendant proprietor actively assisted an intoxicated person in getting his motor car out of the parking lot and onto the public highway. In such a case, liability, if any, is predicated, not on any negligence in any duty of supervision of the premises, but on active negligence existing irrespective of any sales of intoxicating liquor or other conduct causing the intoxication.

Moreover, paragraph 3 of the second count of the complaint, although somewhat lacking in clarity, fairly indicates that the plaintiff is relying on the liability of the defendants as sellers of intoxicating liquor, and that the foregoing two specifications refer to claimed causes of action springing from the sales. If this is so, they are within the scope or area of operation of the common-law rule that it was not the sale of the liquor, but its consumption,

which was the proximate cause of the decedent's intoxication and his claimed resulting death.

The parties and the trial court treated the demurrer to the second count as raising the foregoing principles of law in the same way as did the demurrer to the fifth count. So treated, the second count failed to state a cause of action under any theory, and the court was not in error in sustaining the demurrer addressed to that count. *Warner* v. *Liimatainen*, 153 Conn. 163, 167, 215 A.2d 406.

III

There remains the third count, which does not allege negligence but merely the sale of intoxicating liquor to the decedent while he was intoxicated in violation of General Statutes § 30-86, which provides a criminal penalty for such a sale.

While the violation of an applicable statute by a person governed by it is ordinarily negligence per se, to constitute a common-law cause of action, that negligence must have been a proximate cause of the injury for which damages are sought. See cases such as *Madenford* v. *Interstate Lumber & Mill Corporation*, 153 Conn. 62, 64, 212 A.2d 588. Here, even if the plaintiff had alleged negligence in the third count, as she did in the second count, the sale of the liquor, even though in violation of a criminal statute, necessarily was to a person already intoxicated. It is not alleged, nor could it be reasonably inferred, that the decedent's state of intoxication, prior to the sale in violation of § 30-86, was not voluntary, nor that any sale, after a state of intoxication had already been voluntarily reached, operated as a superseding proximate cause of the inability safely to operate the car. That inability would presumably have existed at least as soon as a state

of intoxication had been reached. Thus, there is absent any allegation that the sale, made after the decedent was already voluntarily intoxicated, was, or could be, a superseding, operative, proximate cause of the intoxication claimed to have resulted in his death. Thus the sale, even though in violation of § 30-86, did not give rise to a common-law cause of action against the seller.

This conclusion is reinforced, if indeed any reinforcement is necessary, by the history of § 30-86. The portion of § 30-86 prohibiting the sale of intoxicating liquor to an intoxicated person has long been the law of this state. It appeared as a portion of § 6 of chapter 99 of the Public Acts of 1872, which, as previously pointed out, was the very public act in which, in § 8, the original dram shop act appeared. Under these circumstances, and in the absence of any language expressive of an intention so to do, it is inconceivable that the General Assembly would, in a single public act, have withheld, as it did, in one section any right of action in favor of an intoxicated person under the dram shop act and in another section have accorded him a special right of action under what is now § 30-86. The court was not in error in sustaining the demurrer to the third count.

As previously noted, the foregoing discussion is dispositive of the action of the court in sustaining the demurrer by Morrocco to the fourth, fifth and sixth counts, which were directed against him.

There is no error.

In this opinion the other judges concurred.